UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ELLIOTT D. LEVIN as Chapter 7 Trustee for OneStar Long Distance, Inc.,<br>　　　　Appellant,<br>　vs.<br>VERIZON BUSINESS GLOBAL, LLC, successor to MCI, INC.,<br>　　　　Appellee. | 3:13-cv-00145-RLY-WGH |
| In re OneStar Long Distance, Inc.<br>　　　　Debtor. | Bankruptcy Case No. 03-72697 |
| Elliott D. Levin, as Chapter 7 Trustee for OneStar Long Distance, Inc.,<br>　　　　Plaintiff,<br>　vs.<br>MCI, Inc.<br>　　　　Defendant. | Adversary Proceeding No. 05-07061 |

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**

Appellant, Elliott D. Levin, in his capacity as Chapter 7 Trustee for the Debtor, OneStar Long Distance, Inc., appeals the Bankruptcy Court's Order on Summary Judgment Motions, entered on March 22, 2013, and March 28, 2013, respectively, concluding that all pre-petition transfers that OneStar made to MCI[1] between October 8, 2003, and December 19, 2003, totaling $2,471,858.02, were subject to the "subsequent

---

[1] Verizon Business Global, LLC, is the successor to MCI, Inc. For purposes of this appeal, the court will refer to the appellee simply as MCI.

1

advance of new value" affirmative defense pursuant to 11 U.S.C. § 547(c)(4). For the reasons set forth below, the court **REVERSES** the decision of the Bankruptcy Court and **REMANDS** the case for proceedings consistent with this opinion.

I.   **Statement of Facts**

OneStar was a reseller of telecommunication services which it purchased wholesale from suppliers such as MCI and other carriers, including Wiltel Communications. (Deposition of Alan Powers ("Powers Dep.") at 14, 19, 20; *see also* IceNet Pre-Petition Bank Statements, attached as Ex. H to MCI's Motion for Partial Summary Judgment). OneStar had a longstanding relationship with MCI and in that regard, entered into a number of Telecommunications Services Agreements with MCI. (*Id*. at 89-90 & Dep. Ex. 20).

In 1999, the telecommunications industry "experienced a significant downturn in investor confidence, business volumes, and financial performance." (Deposition of William Stapleton ("Stapleton Dep.") at 72). OneStar was no exception. (*Id.*). By 2002, OneStar could not pay its monthly bills from MCI (including other creditors) as they came due. (*Id*. at 129). In June of 2002, OneStar executed a security agreement and a promissory note payable to MCI totaling $5,907,396.48. (Deposition of Thomas Tracey ("Tracey Dep.") at 82 & Dep. Ex. 20). By late September of 2003, OneStar's debt to MCI rose to over $7.5 million, prompting MCI to issue notices of intent to disconnect service on September 29, 2003, and November 25, 2003, respectively, if MCI was not paid within seven (7) days of the date of the letter. (*Id*. Ex. 15; Powers Dep. Ex. 19).

On October 7, 2003, IceNet was formed by the principals of OneStar. (Deposition of Martin Huebschman ("Huebschman Dep.") at 106-07; Huebschman Dep. Ex. 29; Powers Dep. at 181). On that same date, OneStar and IceNet entered into a Wholesale Services Agreement ("WSA"), whereby OneStar began to purchase telecommunication services from IceNet. (Powers Dep., Ex. 10; Huebschman Dep. at 106-07 (OneStar's Chief Financial Officer and General Counsel, Martin Huebschman, testified that although the WSA was backdated to when IceNet was formed as an LLC, October 7, 2003, was the "effective date" of when services began between the two entities).

On December 23, 2003, OneStar, IceNet, and MCI entered into a formal written agreement entitled the Assignment and Assumption Agreement ("Assignment"). (Powers Dep., Ex. 12). The Assignment assigned OneStar's service agreements with MCI to IceNet and IceNet assumed some, but not all, of OneStar's obligations (note and usage obligations) incurred for MCI service through that date. (*Id*., Ex. 12, §§ 1(a), 1(d), 3(b), 3(e), 4 (a), 4(b)). IceNet's agreement to assume the note obligations was evidenced by a promissory note payable to MCI. (*Id*., Ex. 12, § 4(a)). Pursuant to the Assignment, MCI agreed to provide and deliver telecommunication services to IceNet, who in turn began selling those services to OneStar. (*Id*.).

The parties dispute whether MCI's transition from providing telecommunication services to OneStar to providing such services to IceNet occurred overnight on December 22, 2003, the date the Assignment was actually executed. The Trustee contends MCI actually began supplying telecommunication services to IceNet, instead of OneStar, beginning in October 2003, and that the Assignment in December 2003 among OneStar,

MCI and IceNet simply formalized an already existing practice among these parties and thereby officially assigned OneStar's rights under various telecommunication services agreements with MCI to IceNet. On the other hand, MCI contends that it continued to supply telecommunication services to OneStar until the Assignment was formally executed on December 22, 2003.

On December 31, 2003, an involuntary bankruptcy petition was filed against OneStar under Chapter 7 of Title 11 in the Bankruptcy Court. IceNet thereafter filed a proof of claim for the debts owed by OneStar to IceNet, asserting no charges for service for the period prior to the Assignment. (Huebschman Dep. Ex. 32). Instead, the only claim for usage expressly states that such charges "were incurred after the Bank Assignment was executed." (*Id.*).

In Count I of the present adversary proceeding between the Trustee and MCI, the Trustee alleges that the payments made by OneStar to MCI 90 days prior to the involuntary petition date, totaling $2,471,858.02, "constitute avoidable transfers pursuant to the provisions of § 547(b) of the Bankruptcy Code." (*See* Complaint ¶ 20). MCI denied the allegations, and asserted the subsequent advance of new value defense under 11 U.S.C. § 547(c)(4). (*See* Answer, ¶ 20 & Fifth Affirmative Defense). In its ruling on the parties' cross-motions for summary judgment, the Bankruptcy Court granted MCI's Motion for Partial Summary Judgment on New Value to or for the Benefit of the Debtor, thereby finding that MCI was entitled to the defense as a matter of law. In addition, the Bankruptcy Court denied as moot the Trustee's Motion for Summary Judgment and MCI's Motion for Summary Judgment.

All other facts necessary to this appeal will be addressed in the Discussion Section.

## II. Standard of Review

Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court reviews *de novo* a bankruptcy court's grant of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Dick v. Conseco, Inc.*, 458 F.3d 573, 577 (7th Cir. 2006) ("In a second appeal from a bankruptcy court's decision, we apply the same standard of review as did the district court, which in the case of the bankruptcy court's grant of summary judgment, is de novo.") (internal quotation marks omitted).

## III. Discussion

The Trustee raises five (5) issues on appeal, all of which relate to whether the Bankruptcy Court erred in finding that MCI gave new value to OneStar in the form of telecommunication services throughout the preference period "to or for the benefit of" OneStar under 11 U.S.C. § 547(c)(4).

A trustee may "avoid" and recover any payments made by the debtor to a creditor for a pre-existing debt "on or within 90 days before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 547(b). Section 547 (c)(4) of Title 11 provides a defense to a creditor in a preference action to the extent: (1) that, after payment, the creditor gave new value to or for the benefit of the debtor; (2) which new value was not secured; and (3) on account of which new value the debtor did not make an otherwise

unavoidable transfer to the creditor. 11 U.S.C. § 547(c)(4). "New value" means, *inter alia*, money or money's worth in goods, services, or new credit. 11 U.S.C. § 547(a)(2). The purpose of the new value defense is to reward a creditor for replenishing the debtor's estate and not leaving it worse off as a result of the preferential transfer. *Koch Bros. Dev. Co. v. Cont'l Constr. Eng'rs, Inc.*, 930 F.2d 648, 652 (8th Cir. 1991) ("[T]he relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate. If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor."); *see also In re Globe Bldg. Materials, Inc.*, 484 F.3d 946, 950 (7th Cir. 2007) ("In assessing whether a creditor has provided 'new value' to a debtor, courts sometimes ask whether the preference payment being avoided has been 'repaid to the bankruptcy estate,' that is 'whether the new value replenishes the [debtor's] estate.'" (internal citations omitted)); *In re Prescott*, 805 F.2d 719, 731 (7th Cir. 1986) ("[T]he theory behind the 'subsequent advance' exception to the trustee's avoiding power is that to the extent unsecured new value is given to the debtor after a preferential transfer is made, the preference is repaid to the bankruptcy estate.").

The parties agree that OneStar's security agreement with MCI, dated June 30, 2002, does not secure repayment of the account debt which serves as the basis of the new value relied upon by MCI. Thus, the debt at issue remains unsecured. The parties dispute the remaining elements of the defense.

### A. The New Value Remained Unpaid

The Trustee cites the Seventh Circuit's decision in *In re Prescott*, *supra*., for the proposition that a creditor who raises the "new value" defense must establish that the debt

remained unpaid.  *See In re Prescott*, 805 F.2d at 731 ("The creditor that raises a 'subsequent advance' defense has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer.").  The Trustee contends that, as a result of the Assignment of OneStar's debt to IceNet, the debt to MCI was "paid."  Accordingly, the Trustee argues, the Bankruptcy Court's conclusion that OneStar's debt was "merely transferred to IceNet" and thus, remained unpaid as to MCI, was erroneous.

As noted in the Background Section, the Assignment involved and was executed by three parties: OneStar, IceNet, and MCI.  In Section 1 of the Assignment, OneStar assigned the Services Agreement with MCI to IceNet.  OneStar acknowledged that, as of the Assignment's effective date, the amount outstanding to MCI, totaling $9,845,622.52, "is fully due and owing."  (Powers Dep., Ex. 12, § 1).  OneStar agreed that it "shall remain liable for any Services Obligations [i.e., debt] incurred thereunder on or before the Assignment Effective Date."  (*Id*., Ex. 12, § 6(b)).  In Section 2, MCI assigned all right, title, and interest in the debt owed by OneStar to IceNet.  (*Id*., Ex. 12, § 2).  The Assignment contains no language evidencing a release of the debt.  OneStar's debt to MCI thus remained "unpaid."

Relatedly, the Trustee argues the Bankruptcy Court erred by finding that the Assignment did not constitute a transfer of property to MCI.  The Bankruptcy Code defines "transfer," in relevant part, as a disposition of the property of the debtor or an interest of the debtor in property.  11 U.S.C. § 101(54).  An assignment falls within the definition of "transfer"; however, a Section 547 preferential transfer must be from the

7

debtor *to the creditor*. OneStar did not transfer any property or an interest in the property of the estate to MCI as a result of the Assignment. As the Bankruptcy Court correctly observed, OneStar's debt was merely transferred to IceNet; consequently, the new value relied upon by the Trustee was not the subject of an "otherwise unavoidable transfer."

**B.    The Preference Period**

The Bankruptcy Court found, as a matter of law, that MCI provided new value in the form of telecommunication services directly to OneStar, rather than IceNet, throughout the preference period until the Assignment was formerly executed on December 22, 2003. The Trustee contends this conclusion is expressly contrary to the deposition of Alan Powers, the former Chief Executive Officer of OneStar, and the circumstantial evidence relied upon by the Trustee in opposition to MCI's motion for summary judgment.

In the adversary proceeding between the Trustee and IceNet, Mr. Powers testified by affidavit that MCI began selling telecommunication services to IceNet in October of 2003, and that IceNet, in turn, sold those same services to OneStar. (Powers Dep. at 58-59; Powers Dep. Ex. 5, ¶ 47). In his deposition in this proceeding, he testified that he believed that information was accurate. (*Id*. at 59). He later clarified that the information contained in the affidavit was from "information [he] either knew [him]self" or information he "dug up the answer to." (*Id*. at 271). Although he could not recall exactly when MCI services started, he explained that "in dealing with MCI or any of the large telecom companies, it takes months and months and months of negotiation to get anything accomplished," and thus, his "best guess" would be that sales of

8

telecommunication services from MCI to IceNet began before the Assignment's effective date.  (*Id.* at 58).

On cross-examination, Mr. Powers' stated that his testimony regarding the commencement of sales from MCI to IceNet was based on "something that [he] believe[d] another person ha[d] told [him]," and on the history of OneStar's business relationship with MCI.  (*Id*. at 172).  "Normally, the documents, from MCI particularly, took so long to negotiate that services were put in place way before the documentation came, as a general rule."  (*Id*.).  Upon further questioning regarding the invoices from MCI to OneStar before January 1, 2014, Mr. Powers testified that he believed those bills included service that was delivered to IceNet, but that his testimony in that regard was based on speculation.  (*Id.* at 173).  Mr. Powers began to explain his answer, but the record does not contain the following page.  (*Id*. ("Well, it would have been kind of the whole . . . .")).

The court finds the Bankruptcy Court erred by failing to consider the totality of Mr. Powers' testimony.  Mr. Powers asserted on more than one occasion that he had personal knowledge of whether MCI was providing service to IceNet or to OneStar.  (*Id*. at 59, 271; Powers Dep. Ex. 5, ¶ 47).  One would expect Mr. Powers, the CEO of OneStar, to have such knowledge.  Mr. Powers' affidavit in the IceNet Adversary was given four years before his deposition in this case, and thus, much closer in time to the events material to OneStar's 2003 bankruptcy.  In addition, in this litigation, he testified that his affidavit was "accurate."  (*Id*. at 59).  Instead of ignoring that testimony, the Bankruptcy Court should have given it some weight.

In addition to Mr. Powers' testimony, the Trustee also presented the following circumstantial evidence to the Bankruptcy Court: (1) the WSA between OneStar and IceNet dated October 7, 2003, pursuant to which IceNet began selling telecommunication services to OneStar; (2) invoices from IceNet reflecting $2.7 million in telecommunication services that it provided to OneStar in October, November, and December 2003 (Huebschman Dep. Ex. 8 at Ex. A); and (3) checks totaling $500,000 written in December 2003 by IceNet to MCI, written between December 19, 2003, and December 29, 2003, signed by Mr. Powers as Secretary of IceNet (Plaintiff's Ex. D; Huebschman Dep. Ex. 8).

MCI presented evidence which poked holes into the Trustee's case. For example, MCI presented evidence that: (1) the checks issued by IceNet to MCI in December 2003 were returned to IceNet without negotiation (Deposition of Michael Treat ("Treat Dep.") at 74; Huebschman Dep. Ex. 9); (2) IceNet's proof of claim in OneStar's bankruptcy case asserted no charges for sales to OneStar in the period prior to the Assignment; (3) MCI's November 25, 2003, disconnection notice was sent to OneStar, not IceNet (Powers Dep. at 190; Powers Dep. Ex. 19); and (4) e-mail communications between the parties during negotiation of the Assignment reflecting a prospective relationship between MCI and IceNet. (Treat Dep. Exs. 19, 21). In light of this evidence, the Bankruptcy Court held that none of the evidence relied upon by the Trustee – the WSA, invoices and checks – had any probative value regarding the commencement of MCI sales to IceNet.

"[S]ummary judgment is not appropriate if the court must make a 'choice of inferences.'" *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Instead, all reasonable

inferences that may be drawn from the evidence must be interpreted in the light most favorable to the non-movant; here, the Trustee. Given the testimony of Mr. Powers and the circumstantial evidence produced by the Trustee, the court finds a reasonable inference could be drawn that the execution of the WSA coincided with when MCI began providing telecommunication services to IceNet, and ceased providing such services to OneStar. The court would be remiss not to mention the fact that IceNet was composed of many of the same officers and directors as OneStar (including Mr. Powers, Mr. Huebschman, and Mr. Stapleton), and that Mr. Powers signed checks on IceNet's behalf in December 2003 while still apparently employed as CEO of OneStar. Accordingly, summary judgment in favor of MCI was inappropriate.

    **C.    Remaining Issues**

The balance of the issues are: (1) whether MCI provided new value "for the benefit of" OneStar during the period between the execution of the Assignment on December 22, 2003, and the date the involuntary petition for bankruptcy was filed against OneStar, December 31, 2003; (2) whether MCI gave new value to OneStar after its receipt of checks totaling $300,000 from OneStar in December 2003; (3) whether MCI established that non-usage charges, surcharges, and reimbursement for taxes billed by MCI constitute "new value." Each of these issues hinges on when MCI began providing telecommunication services to IceNet, and thus, cannot be resolved in this appeal.

## IV. Conclusion

The decision of the United States Bankruptcy Court for the Southern District of Indiana granting MCI's Motion for Partial Summary Judgment on its new value defense is **REVERSED** and **REMANDED** for proceedings consistent with this opinion.

**SO ORDERED** this 2nd day of May 2014.

										_____
										RICHARD L. YOUNG, CHIEF JUDGE
										United States District Court
										Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.